UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EMANUEL RANDALL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0367** |
| **LSP-WARDEN N. BURL CAIN** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.  Factual and Procedural Background**

The petitioner, Emanuel Randall ("Randall"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On December 5, 2006, Randall was charged by bill of information in Orleans Parish with the unlawful possession of cocaine.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 7, Bill of Information, No. 467-770, 12/5/06.

The record reflects that, on the evening of June 19, 2006, Officer Carlos Peralta was on patrol with his partner, Officer Jason Shrunk, near L.B. Landry High School and the Fischer Housing Project in New Orleans, Louisiana.[4] The officers saw a man, later identified as Randall, pacing between the sidewalk and the curb of Erie Street. The officers thought Randall may be urinating on the street, so they approached the area and confirmed their suspicions. When their headlights illuminated Randall, he turned to face the car. The officers exited the car and approached Randall, who continued to urinate.

The officers ordered Randall to zip his pants, because there were children in the area. Randall had a strong smell of alcohol, his speech was slurred, and he was confrontational. The officers placed him under arrest for lewd conduct and for public intoxication, and they issued him a municipal citation. While searching Randall's right front pocket, Officer Shrunk found a white rock which later tested positive as cocaine.

After Randall was handcuffed, he complained that he was having a heart attack, fell to the ground, and went limp. Because he refused to assist, the officers experienced difficulty getting him into the police car. Because the officers were suspicious that he was feigning a heart attack, they told him that he would be charged with resisting arrest if he was not physically ill. Randall then admitted that he did not need medical services.

Randall was tried before a jury on January 13, 2009, and was found guilty as charged.[5] The Trial Court sentenced Randall to serve five years at hard labor consecutive to any other sentence he

---

[4]The facts of the case were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Randall*, 25 So.3d 697 (La. App. 4th Cir. 2009) (Table); St. Rec. Vol. 4 of 7, 4th Cir. Opinion, 2009-KA-0782, p. 2, 12/16/09.

[5]St. Rec. Vol. 1 of 7, Trial Minutes, 1/13/09; St. Rec. Vol. 4 of 7, Jury Verdict, 1/13/09; Transcript of Opening Statement, 1/13/09; Trial Transcript, 1/13/09; Transcript of Closing Arguments, 1/13/09.

may serve.[6] Randall also entered a plea of not guilty to a multiple bill filed by the State.[7] At a hearing held August 14, 2009, the Trial Court denied Randall's motion for a new trial.[8]

The Trial Court later, on January 4, 2010, adjudicated Randall to be a fourth felony offender and re-sentenced him to serve life in prison to be served without benefit of parole, probation, or suspension of sentence and to run consecutively to any other sentence.[9]

On direct appeal to the Louisiana Fourth Circuit of Appeal, Randall's appointed counsel argued that the Trial Court erred in refusing to allow defense counsel to impeach Officer Peralta's testimony with a report signed and prepared by Officer Shrunk on the grounds that the report was hearsay, and this ruling denied him a defense.[10] The Court affirmed the conviction on December 16, 2009, finding no merit to the claims raised.[11] On its errors patent review, the Court was compelled to vacate Randall's sentence and remand for re-sentencing because the motion for new trial was not ruled on prior to the original sentencing.

At the direction of the Louisiana Fourth Circuit, on January 19, 2010, the Trial Court vacated its March 13, 2009 and January 4, 2010 sentences and re-sentenced Randall as a fourth offender to

---

[6]The record indicates that Randall had other outstanding charges. St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/13/09; St. Rec. Vol. 3 of 7, Sentence of the Court, 3/13/09; St. Rec. Vol. 4 of 7, Sentencing and Multiple Bill Hearing Transcript, 3/13/09. The record reflects that, on May 27, 2009, the Trial Court also imposed a sentence of 142 days on Randall for contempt of court. St. Rec. Vol. 3 of 7, Sentence of the Court, 5/27/09.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/13/09; Multiple Bill, undated; St. Rec. Vol. 4 of 7, Sentencing and Multiple Bill Hearing Transcript, 3/13/09.

[8]This action was taken at the direction of the Louisiana Fourth Circuit Court of Appeal to allow the appeal to proceed. St. Rec. Vol. 1 of 7, Minute Entry, 8/14/09; St. Rec. Vol. 3 of 7, Minute Entry, 7/31/09; St. Rec. Vol. 4 of 7, 4th Cir. Order, 2009-KA-0782, 7/22/09.

[9]St. Rec. Vol. 1 of 7, Multiple Bill Hearing Minutes, 1/4/10; Sentence of the Court, 1/4/10; St. Rec. Vol. 6 of 7, Multiple Bill Hearing Transcript, 1/4/10.

[10]St. Rec. Vol. 4 of 7, Appeal Brief, 2009-KA-0782, 7/6/09.

[11]*State v. Randall*, 25 So.3d at 697; St. Rec. Vol. 4 of 7, 4th Cir. Opinion, 2009-KA-0782, 12/16/09.

serve life in prison without benefit of parole, probation, or suspension of sentence and to be served consecutively to any other sentence.[12]

In the meantime, on January 5, 2010, Randall submitted a timely writ application related to his initial appeal to the Louisiana Supreme Court.[13] The Court denied the application without stated reasons on September 3, 2010.[14]

While that writ application was pending, Randall's appointed counsel filed a separate appeal in the Louisiana Fourth Circuit arguing that the life sentence was excessive under the circumstances where the range was 20 years to life.[15] Randall filed pro se a supplemental brief raising two additional arguments:[16] (1) the Trial Court erred in adjudicating him a fourth offender where the State failed to prove that the ten-year cleansing period had not elapsed; and (2) in the alternative, his counsel was ineffective when he failed to object to the State's failure to prove that the cleansing period had not elapsed.

On June 22, 2011, the Louisiana Fourth Circuit affirmed the sentence but directed that the Trial Court amend the sentence to remove the restriction on parole to be in compliance with the habitual offender statute.[17]

---

[12]St. Rec. Vol. 1 of 7, Sentencing Minutes, 1/19/10; St. Rec. Vol. 6 of 7, Sentencing Transcript, 1/19/10.

[13]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 10-KO-125, 1/20/10 (dated 1/5/10); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2010-KO-125, 1/20/10 (showing postmark 1/7/10).

[14]*State v. Randall*, 44 So.3d 697 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2010-KO-0125, 9/3/10.

[15]St. Rec. Vol. 6 of 7, Appeal Brief, 2010-KA-1027, 8/20/10.

[16]St. Rec. Vol. 6 of 7, Pro Se Supplemental Brief, 2010-KA-1027, 10/6/10.

[17]*State v. Randall*, 69 So.3d 683 (La. App. 4th Cir. 2011); St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2010-KA-1027, 6/22/11. The record does not contain any further orders from the Trial Court regarding the amended sentence.

Randall submitted a timely writ application to the Louisiana Supreme Court on July 11, 2011, in which he argued that his life sentence was excessive.[18] The Court denied the application without reasons on January 13, 2012.[19]

Randall's conviction became final 90 days later, on April 12, 2012, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).[20]

## II. Federal Habeas Petition

On March 8, 2012, the clerk of this Court filed Randall's petition for federal habeas corpus relief in which he alleges that his sentence is cruel and unusual punishment, because it is excessive and disproportionate to the offense.[21]

---

[18]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 11-KO-1560, 7/14/11 (dated 7/11/11, postmarked 7/12/11); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2011-KO-1560, 7/14/11 (showing postmark 7/12/11).

[19]*State v. Randall*, 77 So.3d 952 (La. 2012); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2011-KO-1560, 1/13/12.

[20]The State mentions in a footnote in its opposition response that Randall filed a state application for post-conviction relief on October 13, 2011. Rec. Doc. No. 11, p. 1, fn. 1. The record does not contain a copy of this application, and Randall denies having filed for any post-conviction review in the state courts. Rec. Doc. No. 3, p. 3. Nevertheless, the State suggests that the application is not relevant to the claim raised here.

[21]Rec. Doc. No. 3, pp. 3-4, 6.

The State filed a response in opposition to Randall's petition in which it concedes the timeliness of the filing and that the claims are exhausted.[22] The State argues that Randall's claim is without merit and the state courts' rulings were not contrary to or an unreasonable application of federal law. Randall filed a reply to the State's opposition in which he restates his arguments in support of his claim.[23]

### III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 2, 2012.[25] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

---

[22]Rec. Doc. No. 11.

[23]Rec. Doc. No. 12.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Randall's petition on March 8, 2012, when the filing fee was received. Randall dated his signature on the form petition on February 2, 2012. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing to this Court. The fact that he later paid the filing fee would not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

The State concedes and the record demonstrates that Randall's petition was timely filed and that his claim is exhausted. The record does not indicate that this claim is in procedural default. The Court, therefore, will address Randall's claim.

## IV. Standards of Review of the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.

*Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V. Excessive Sentence

Randall alleges that the life sentence he received as a fourth felony offender was cruel and unusual because it is excessive and disproportionate in violation of the Eighth Amendment and Supreme Court law. He bases his argument on the fact that his underlying drug conviction was not a violent crime and his prior manslaughter conviction was not a violent crime at the time of that conviction. He further claims that the life sentence was inappropriate for him as a generally non-violent offender.

Under a broad reading, Randall further argues that the sentence under the circumstances was grossly disproportionate to the crime and amounted to cruel and unusual punishment. In his reply to the State's opposition, Randall further argues that the sentence criminalizes his status as a drug addict in violation of Supreme Court law.

These arguments were brought by Randall's counsel on direct appeal of the sentence before the Louisiana Fourth Circuit. The Court found the claim to be meritless on the basis that the Trial Court provided thorough reasons for imposing the sentence, all of which were supported by the record, and that Randall's escalating criminal history, including a homicide conviction, warranted the maximum life sentence. The Court also agreed with the Trial Court's determination that the sentence was appropriate to achieve the goals of the habitual offender laws under Louisiana Supreme Court precedent. This was the last reasoned opinion issued by a state court on this issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Randall again argues to this Court that his sentence is excessive under the Eighth Amendment. Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). As here, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005). In those rare cases, "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996), *cert. denied* 519 U.S. 883 (1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert denied* 506 U.S. 849 (1992). When a habeas petitioner has been sentenced under a habitual offender statute, a federal court also

considers "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F. 2d at 316.

A federal court will not review a state-imposed sentence within the statutory limits without a threshold showing that the sentence is "grossly disproportionate to the offense" so to be completely arbitrary and shocking. *See Smallwood*, 73 F.3d at 1347; *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975). Therefore, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence, unless it is first shown to be disproportionate to the offense as to be completely arbitrary and shocking. *Id.* Randall has not made this showing.

In denying relief to Randall, the Louisiana courts did a thorough comparison of sentences in other Louisiana cases with that in Randall's case. This comparison included a detailed examination of the cases offered by Randall in his state court pleadings and in his federal petition. The state appellate court's detailed comparison correctly demonstrated that the sentence was not disproportionate and that Randall's case was distinguishable from the cases where lower sentences were imposed.

At the time of his crime, La. Rev. Stat. Ann. § 15:529.1(A)(1)(c)(I) (West 2006), under which Randall was sentenced,[26] provided for a fourth felony offender to receive a sentence of not less than 20 years and not more that life:[27]

> (c)   If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:

---

[26]*See State v. Randall*, 69 So.3d 683, 686 (La. App. 4th Cir. 2011); St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2010-KA-1027, p. 5, 6/22/11.

[27]The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. *State v. Sugasti*, 820 So.2d 518, 521 (La. 2002). For information purposes, that statute did not change between 2006 and 2010 when he was finally sentenced.

(I) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; . . .

At that time of Randall's crime, the term for a first conviction for possession of cocaine was not less than two years nor more than five years and may receive a fine of not more than $5,000.00. La. Rev. Stat. Ann. § 40:967(C)(2) (West 2006). Applying the terms of the habitual offender statute, Randall faced a sentencing range of no less than 20 years to life imprisonment, with a possible fine. He of course was given the maximum sentence of life imprisonment.

Randall concedes that he had numerous prior convictions, though some were not necessarily violent. The violent characterization of the prior felony convictions is not alone an issue in the provision under which Randall was sentenced, unlike § 15:529(A)(1)(c)(ii) (West 2006), which called for a mandatory life sentence under certain circumstances including a combination of violent crimes as defined by Louisiana law.[28]

Randall's record, as proven at the multiple bill hearing, showed that he had prior convictions for possession of a stolen automobile valued over $500 and possession of cocaine, which is a felony in violation of Louisiana's Controlled Dangerous Substances Law. He also served time on at least one probation revocation and had numerous other arrests which were made known to the sentencing judge. Randall also served 11 years on his compromise plea of guilty to manslaughter, which has long been recognized as a crime of violence in Louisiana. *See, e.g.*, *State v. Savoy*, 205 La. 650, 663

---

[28] This part of the statute provided: "If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence."

(La. 1944) (recognizing and listing manslaughter as a crime of violence). He entered that plea as a compromise only after his original conviction for second degree murder, for which he was given a life sentence, was overturned on appeal. As such, under Louisiana law, Randall's conviction for the offense at issue was more than a sufficient basis for imposition of the maximum life sentence.

Furthermore, the United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing*, 528 U.S. at 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005). As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense. *Smallwood*, 73 F.3d at 1346-47.

At the time of Randall's crime, Louisiana courts consistently imposed a life sentence to similarly situated fourth offenders. *See*, *e.g.*, *State v. Johnson*, 982 So.2d 260 (La. App. 2d Cir. 2008) (life sentence under § 15:529(A)(1)(c)(I) for fourth felony offender for possession of cocaine with three prior convictions, felony theft, simple burglary, and unauthorized use of a movable); *State v. Smith*, 999 So.2d 160 (La. App. 2d Cir. 2008) (life sentence as fourth offender for possession of cocaine appropriate where defendant was a "chronic career criminal" with history of property crimes, violent crimes and drug crimes); *State v. Washington*, 939 So.2d 556 (La. App. 2d Cir. 2006) (life sentence for fourth offender under § 15:529(A)(1)(c)(I) of theft of goods due to extensive but non-violent criminal history and finding of likelihood that he would commit crimes if given leniency).

Nothing Randall has presented distinguishes his situation from other cases in Louisiana in which a life sentence was imposed under similar circumstances. He has not demonstrated that his sentence was disproportionate to the crime for which he was convicted or otherwise out of line with the sentences imposed upon habitual offenders like himself in similar cases.

Randall also suggests that the sentence amounted to punishment for his addiction to narcotics. In *Robinson v. California*, 370 U.S. 660 (1962), relied upon by Randall, the United States Supreme Court held that the California statute which made addiction to narcotic drugs a criminal offense, punishable as such, was violative of the Eighth and Fourteenth Amendments to the United States Constitution. The *Robinson* Court made clear that while it is unconstitutional to impose criminal sanctions on a person simply because he is addicted to drugs, it is <u>not</u> unconstitutional to punish overt acts which may originate from drug addiction. *Robinson*, 370 U.S. at 665. Thus, Randall has no basis under *Robinson* or other federal law to avoid imposition of the habitual offender laws based on his unsupported claim that he was a drug addict. *See Bailey v. United States*, 386 F.2d 1 (5th Cir. 1967) (finding that *Robinson* did not prohibit punishment for crime even if motivated by drug use).

Randall has not established that his situation is an exception to the cases cited above in which a life sentence was imposed. His commission of felony after felony warranted the life sentence, which was within the sentencing range, under Louisiana law. The imposition of that sentence upon Randall as a fourth felony offender was not so extreme that it violated the Eighth Amendment.

For the reasons discussed above, the state courts' finding that Randall's life sentence was not excessive, was not cruel and unusual, and was not otherwise unconstitutional, was not contrary

to established Supreme Court case law, nor was it an unreasonable application of that precedent. This claim is without merit.

## VI.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Emanuel Randall's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[29]

New Orleans, Louisiana, this 25th day of June, 2012.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[29]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.